UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRISTINA MARZULLO,

                Plaintiff,

    - against -

BEEKMAN CAMPANILE, INC.,

                Defendant.

**MEMORANDUM OPINION & ORDER**

10 Civ. 0364 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Cristina Marzullo – a real estate broker – asserts a claim for tortious interference with contractual relations against Defendant Beekman Campanile, an apartment cooperative ("Beekman"). Marzullo contends that Beekman tortiously interfered with the brokerage agreement between herself and the sellers of two apartment units by reneging on an agreement to permit the buyer to keep a dog in these units. (Cmplt. ¶ 18; Pltf. Br. 6-7) Beekman has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]

For the reasons stated below, the Beekman's motion to dismiss will be granted.

## BACKGROUND

Douglass Elliman Real Estate ("Elliman") and Plaintiff Marzullo entered into a real estate broker's contract with the owners of two Beekman apartment units ("the sellers"), under which they were authorized to broker a sale of the apartments for a period of time.[2]

---

[1] On July 27, 2010, this Court denied Marzullo's application to convert Beekman's Rule 12(b)(6) motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56. (Dkt. No. 7)

[2] Because the subject properties are apartments in a cooperative building, Marzullo was authorized to broker a sale of the shares owned by sellers in the cooperative. (Cmplt. ¶ 5; Marzullo Aff., Ex. B (broker's contract))

(Cmplt. ¶ 5; Marzullo Aff., Ex. B (broker's contract))[3]  The contract provides that the sellers will accept a price of $9,975,000.00 for their apartments, and that Elliman and Marzullo will receive a 6% commission upon sale of the apartments at that price:  "If [the sellers] agree to sell the property pursuant to this agreement, our commission to be paid by [the sellers] shall be six (6%)

---

[3]  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  In its July 27, 2010 order denying Marzullo's application to convert Beekman's motion to dismiss into a motion for summary judgment, this Court ruled that the following documents – attached as exhibits to Beekman's motion to dismiss – could properly be considered in ruling on Beekman's dismissal motion:

> Exhibit A is the Complaint itself.  Exhibit B is the brokerage agreement entered into by Plaintiff and the seller of the apartment.  The Complaint makes reference to this document, stating that "at all relevant times, plaintiff and the Sellers had a contract for plaintiff to serve as a broker for the sale of the Sellers' units at the Subject premises."  (Cmplt. ¶ 22) Exhibit C is the July 8, 2008 decision by the New York Supreme Court, New York County, granting the buyer's motion for summary judgment and relieving the buyer of all contractual obligations.  The Supreme Court decision is referenced and described in the Complaint.  (Cmplt. ¶ 21) Exhibit D is the July 24, 2007 contract of sale between the seller and buyer.  This document is likewise referenced in the Complaint. (Cmplt. ¶ 15)  Exhibit E is the proprietary lease that was included with the contract of sale.  This document is likewise referenced in the Complaint. (Cmplt. ¶ 15)  Exhibit F is the "House Rules" of the coop.  Although the House Rules are not explicitly referenced in the Complaint, they are incorporated in the proprietary lease and therefore are properly considered in connection with Defendant's motion.  Finally Exhibit G is an October 30, 2007 letter from the coop board to the buyer concerning the buyer's dog. This document is incorporated by reference in the Complaint and is integral to it, because it sets forth the material changes to the proprietary lease that Plaintiff challenges in Paragraph 18 of the Complaint.  (Cmplt. ¶ 18)

(Dkt. No. 7)  Accordingly, all of these documents will be referenced in the Court's factual discussion.

percent of the total sale price of the property. . . .   Payment of the commission shall be dispensed from the proceeds paid to the [seller] at the closing. . . ." (Marzullo Aff., Ex. B at ¶ 5)  Beekman owns, operates, manages, and controls the apartment building in which the subject units are located, and any sale of the units must be approved by Beekman.  (Cmplt. ¶¶ 6-8, 10, 12)

The Complaint alleges that Marzullo found a potential buyer willing to pay $9,975,000 for the apartments.  The Complaint further alleges that Marzullo "was entitled to a commission of approximately One Hundred and Forty Thousand ($140,000.00) Dollars from the sale of Sellers' units."[4]  (Cmplt. ¶¶ 11, 16-17)

Beekman allegedly approved the sale, and a contract of sale was signed by the buyer and sellers on July 24, 2007.  (Cmplt. ¶¶ 13-15)

Beekman's "House Rules" include a "no pets" provision – "no bird or animal shall be kept or harbored in the building unless the same in each instance[] be expressly permitted in writing by the Lessor" (Mauskopf Aff., Ex. F (Beekman's House Rules) at ¶ 15).  The contract of sale entered into by the sellers and buyer, however, recites that the buyer has a dog which the buyer intends to keep.  (Marzullo Aff., Ex. C (contract for sale of the unit) at ¶ 49)  Moreover, the Complaint indicates that Beekman issued a revised proprietary lease to the buyer that would have permitted the buyer to retain her dog, and then, "in and around October, 2007, unilaterally, and in bad faith, changed the material terms of the proprietary lease to be issued to the Buyer."[5]  (Cmplt. ¶ 18)

---

[4]  The Complaint does not explain how Marzullo's compensation was calculated, but presumably the amount cited in the Complaint reflects some division of the 6% commission between Elliman and Marzullo.  The precise amount of compensation Marzullo was allegedly entitled to receive is not material to this motion.

[5]  The Complaint does not explain the alleged changes in the "material terms of the proprietary lease," but it is apparent from both sides' submissions that the issue that derailed the sale was the buyer's retention of her dog.  (See Pltf. Br. 6 (the buyer "refused to sign the restrictive pet clause

In October 2007— before the closing – Beekman requested that the buyer sign a document acknowledging that Beekman would only "allow a dog present from time to time (and on a non-continuous basis) in your apartment." (Mauskopf Aff., Ex. G (October 30, 2007 letter from Beekman's agent to buyer))  The buyer then "refused to continue with the purchase . . . and instead, filed an action, seeking to be relieved of all contractual obligations with respect to the purchase of Seller[s]' Units at the Subject Premises." (Cmplt. ¶ 19)  In that action – captioned Carey Lovelace v. Eugene Krauss et al, Index No. 115548/2007 (Sup. Ct., N.Y. Cty.), a state court granted the buyer's motion to cancel the contract of sale and ordered the sellers to return the contract deposit to the buyer.  (Carrick Aff., Ex. C)  The Court noted that the contract of sale provided that if the cooperative "refused consent to the purchase at any time, 'either party may cancel the Contract, and in such event, the Escrowee shall refund the Contract Deposit to Purchaser.'" (Id. (quoting Mauskoff Aff., Ex. D (Contract of Sale) at ¶ 6.3))  The Court held that because the cooperative board had not unconditionally given its consent to the buyer's purchase, "the Plaintiff [properly] exercised her right to cancel the Contract and is due a refund of her Deposit." (Carrick Aff., Ex. C; Cmplt. ¶ 21)

Marzullo filed this action on January 15, 2010, alleging that "defendant intentionally induced the Sellers to breach the contract had between plaintiff and Sellers," and that "defendant's intentional actions rendered performance of the contract between plaintiff and the Sellers impossible." (Cmplt. ¶¶ 24-25)  She claims damages in the amount of $500,000.

---

after she had made abundantly clear in both her contract of sale and at [her] interview that she intended to keep the pet on the property"); Def. Br. 3 (when Beekman "approv[ed] the Buyer on the condition that she acknowledge[] the ["no pet"] policy . . . the Buyer elected to cancel the Sale Contract"))

**DISCUSSION**

**I.      MOTION TO DISMISS STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

**II.     PLAINTIFF HAS NO CLAIM FOR TORTIOUS INTERFERENCE**

    **A.      Applicable Law**

"Under New York law, the elements of tortious interference with economic relations are '(1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom."'" Boehner v. Heise, 734 F. Supp. 2d 389, 403 (S.D.N.Y. 2010) (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996))). "[W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." NBT Bancorp v. Fleet/Norstar Fin. Group, 87 N.Y.2d 614, 621 (1996) (citing Israel v. Wood Dolson Co., 1 N.Y.2d 116, 119 (1956)).

5

B.  **Analysis**

While the Complaint asserts that "defendants intentionally induced the Sellers to breach the contract between plaintiff and Sellers" (Cmplt. ¶ 24), Marzullo abandoned this claim in her opposition to Beekman's motion to dismiss. In her memorandum of law, "Plaintiff concedes that defendant's actions . . . did not result in the sellers (The Krausses) breaching their contract with plaintiff." (Pltf. Opp. Br. 13) This concession is fatal to Marzullo's tortious interference claim.

Marzullo argues that even though Beekman did not induce the sellers to breach their agreement with her, "under New York law, plaintiff is permitted the opportunity to allege that [her] contract with which defendant[] has interfered, has been rendered impossible to perform, even absent an actual breach." (Pltf. Opp. Br. 13 (citing NBT Bancorp, Inc., 87 N.Y.2d 614; Kronos v. AVX Corp., 81 N.Y.2d 90 (1993)))

It is clear, however, that a tortious interference with contract claim may not be premised on a theory that the defendant committed an act that rendered performance of a contract impossible. See, e.g., Twelve Inches Around Corp. v. Cisco Sys., Inc., No. 08 Civ. 6896(WHP), 2009 WL 928077, at *6 (S.D.N.Y. Mar. 12, 2009) ("Plaintiff's allegations that Defendants prevented customer access to the website, thereby making the terms of service impossible to perform, are insufficient to state a claim for tortious interference." (citing Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 481 (S.D.N.Y. 1997) (impossibility of performance does not state a claim for tortious interference under New York law))).

Fonar Corp. is instructive on this point:

> MR Plus concedes that there was no breach of the contract but rather maintains that Fonar's conduct rendered performance of the contract impossible and that this is enough to constitute a tortious interference with contractual relations.

6

> There is indeed some authority on which MR Plus may rely in support of this proposition.  Some courts have stated that in order to make out a claim for tortious interference with contract, a party either needs to show that there was a breach of the contract by the third party or that the defendant's interference made the contract impossible to perform. . . .
>
> However, this proposition runs contrary to the rulings of the New York Court of Appeals and the Second Circuit.  The Court of Appeals, for example, has held that "[i]n order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of contract by the other party."  Jack L. Inselman & Co. v. FNB Financial Co., 41 N.Y.2d 1078 (N.Y. 1977) . . . .
>
> The Second Circuit has concurred in this view, holding that "[u]nder traditional principles of New York law, a party may not recover for tortious inducement of a breach of contract without proving that the contract has been breached."  Baylis v. Marriott Corp., 906 F.2d 874, 877 (2d Cir. 1990) (citing Inselman).
>
> The court adheres to the rulings of New York's highest state court as well as those of the Second Circuit and holds that in order to establish a claim under the tort of interference with contractual relations, a third party must breach the contract after being induced to do so by the defendant.

Fonar Corp., 957 F. Supp. at 480-81 (certain citations omitted); see also Katel Ltd. Liab. Co. v. AT & T Corp., 607 F.3d 60, 66 (2d Cir. 2010) ("'In order to prevail on a cause of action for tortious interference with contractual relations, a plaintiff must establish . . . the actual breach of the contract. . . .'" (quoting Jim Ball Chrysler LLC v. Marong Chrysler–Plymouth, Inc., 19 A.D.3d 1094 (4th Dept. 2005))); Anderson v. Aset Corp., 416 F.3d 170, 171 (2d Cir. 2005) (affirming dismissal of suit because, inter alia, plaintiff "failed to plead the breach required by New York law" (citing NBT Bancorp, Inc., 87 N.Y.2d at 620-21)); Broughel v. Battery Conservancy, No. 07-cv-7755 (GBD), 2009 WL 928280, at *9 (S.D.N.Y. Mar. 30, 2009) ("Inasmuch as plaintiff has failed to demonstrate that Price, Weisz, and Yoes caused the Conservancy to breach contractual obligations it owed to plaintiff, these claims are insufficient as a matter of law."); Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320(RJS), 2008

WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) ("The Second Circuit has held that an 'actual breach' of a contract is required in order to state a claim for tortious interference with contractual relations." (citing D'Andrea v. Rafla-Demetrious, 146 F.3d 63, 66 (2d Cir. 1998) ("Because there was no breach of contract in the instant case, [plaintiff's] tortious interference with contractual relations claim must fail."))); Unique Sports Generation, Inc. v. LGH-III, LLC, No. 03 Civ. 8324 JGK DF, 2005 WL 2414452, at *8 (S.D.N.Y. Sept. 30, 2005) ("Under New York law, breach of contract is a required element of a tortious interference with contract claim."); Dorsett-Felicelli, Inc. v. Cnty. of Clinton, No. 1:04–CV–01141 (LEK/RFT), 2011 WL 1097859, at *3 (N.D.N.Y. Mar. 22, 2011) ("'Deliberate interference with plaintiff's contractual rights that causes damage' is not enough to succeed on a tortious interference with contractual relations claim – actual breach of contract is required under New York law. Thus, in order to survive a motion to dismiss under Rule 12(b)(6), sufficient facts must be plead in the complaint to support the conclusion that the contract was actually breached, not only that damages have resulted due to a defendant's interference." (quoting NBT Bancorp Inc., 87 N.Y.2d at 620-21)); IntelliSec v. Firecom, Inc., No. 00 CV 3557(ILG), 2001 WL 218940, at *6 (E.D.N.Y. Feb. 1, 2001) ("Though plaintiffs cite the decision in S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp., 108 A.D.2d 351 (1st Dept. 1985) for the contrary proposition, namely that plaintiff need not allege a breach to state a claim for tortious interference with contract, the First Department's pronouncements on the need to prove a breach, as defendant correctly argues, have been undermined significantly by the NBT Bancorp decision and their application here is misguided.").

   The cases Marzullo relies on are not to the contrary. Indeed, the first case cited by Marzullo, NBT Bancorp, explicitly rejects the argument she advances:

8

> NBT urges that, as a matter of precedent and policy, a defendant's deliberate interference with plaintiff's contractual rights that causes damage should be punishable as tortious interference whether or not the contract was actually breached.
>
> New York law is to the contrary. Ever since tortious interference with contractual relations made its first cautious appearance in the New York Reports . . . our Court has repeatedly linked availability of the remedy with a breach of contract. Indeed, breach of contract has repeatedly been listed among the elements of a claim for tortious interference with contractual relations.

NBT Bancorp, 87 N.Y.2d at 620-21.

Marzullo also cites an earlier case, Kronos v. AVX Corp., which lists one of the elements of interference with contractual relations as "defendant's intentional inducement of the third party to breach or otherwise render performance impossible." Kronos, Inc., 81 N.Y.2d at 94. However, the only case cited in Kronos in support of this statement – Israel v. Wood Dolson Co. – expressly holds that "[a]n essential element" of the intentional interference with contract claim "is the breach of the contract." Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120 (1956). The Israel decision does not mention impossibility. Moreover, the "sole question" presented in Kronos was when the cause of action for tortious interference accrued. Kronos, Inc., 81 N.Y.2d at 92. The Kronos court did not discuss whether a tortious interference claim could rest solely on proof that a defendant committed acts that rendered performance impossible.

The Court concludes that proof of a breach is necessary to prevail on a tortious interference with contractual relations claim. Because Marzullo concedes that Beekman did not induce the apartment owners to breach their contract with her (Pltf. Opp. Br. 13), she has failed to state a claim.[6]

---

[6] Given this conclusion, the Court does not reach Beekman's second ground for dismissal: that Plaintiff has not adequately alleged improper interference with a contract.

9

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 12) and to close this case.

Dated: New York, New York  SO ORDERED.
      July 22, 2011

                                                              _____
                                                              Paul G. Gardephe
                                                              United States District Judge